**KEYSTONE CENTRAL SCHOOL DISTRICT, Petitioner,**

v.

**SUGAR VALLEY CONCERNED CITIZENS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 13, 2000.

Decided May 21, 2002.

Dorothy M. Bollinger, Lansdale, for petitioner.

James N. Bryant, State College, for respondent.

BEFORE: DOYLE, Senior Judge,[1] and McGINLEY, Judge, and MIRARCHI, Jr., Senior Judge.

OPINION BY Senior Judge DOYLE.

Keystone Central School District (Keystone) petitions this Court for review of the November 22, 1999, order of the State Charter School Appeal Board (CAB), which reversed the decision of Keystone's Board of School Directors (School Board) denying Sugar Valley Concerned Citizens' (SVCC or Sugar Valley) resubmitted application for a charter school,[2] pursuant to what is commonly referred to as the Charter School Law (CSL).[3]

---

**1.** This case was assigned to the opinion writer prior to the date when President Judge Doyle assumed the status of senior judge on January 1, 2002.

**2.** SVCC filed three previous applications on May 31, 1997, November 15, 1997, and March 12, 1998. Each application filed by SVCC was denied by the School Board after public hearings, and SVCC was provided with findings of fact and conclusions of law in each instance.

**3.** *See* the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702. Article XVII–A of the Public School Code, known as the "Charter

On November 14, 1998, SVCC submitted a charter school application to the School Board requesting a five-year charter for Sugar Valley Rural Charter School (SVRCS) pursuant to the CSL.[4] SVCC is a grass-roots coalition of parents, educators and other community members with an interest in the education of Sugar Valley's children. (Reproduced Record, R.R., at 931a). Under SVCC's proposed charter school plan, students would receive an education focusing on a rigorous curriculum that requires a mastery of core knowledge and skills. (R.R. at 932a). All teaching and learning at the SVRCS would be guided by a set of values and principles that reflect American ideals, such as liberty, equality, individuality and community. (R.R. at 936a).

At its January 21, 1999, meeting, after two years of hearings, meetings and information exchanges on Sugar Valley's previous applications, the School Board voted 5–4 to deny SVCC's application, and, on March 1, 1999, the School Board issued its written decision setting forth its findings of fact, its conclusions of law and its reasons for the denial.[5]

In evaluating a charter school application, the School Board must adhere to the following criteria, pursuant to Section 1717–A(e)(2) of the CSL:

A charter school application submitted under this article shall be evaluated by the local board of school directors based on criteria including, but not limited to, the following:

(i) The demonstrated, sustainable support for the charter school plan by teachers, parents, other community members and students, including comments received at the public hearing held under subsection (d).

(ii) The capability of the charter school applicant, in terms of support and planning, to provide comprehensive learning experiences to students pursuant to the adopted charter.

(iii) The extent to which the application considers the information requested in section 1719–A and conforms to the legislative intent outlined in section 1702–A.

(iv) The extent to which the charter school may serve as a model for other public schools.

24 P.S. § 17–1717–A(e)(2).

In denying SVCC's application, the School Board stated that

instead of being educationally innovative, the SVRCS curriculum as submitted is not progressive but planted in the past and is possibly discriminatory, the demonstrated sustainable support for students to attend the charter school does not exist, a valid financial issue exists for both the SVRCS and [Keystone], and the establishment of a non-profit corporation that provides the SVRCS full authority does not appear to exist, the possibility of unlawful independent contractor arrangements exists, the lack of accountability to [Keystone] exists, the liability issues are unclear and

School Law" (CSL), was added by the Act of June 19, 1997, P.L. 225, as amended, 24 P.S. §§ 17–1701–A–17–1732–A.

4. Under Section 1717–A(c) of the CSL, "[a]n application to establish a charter school shall be submitted to the local board of school directors of the district where the charter school will be located...." 24 P.S. § 17–1717–A(c).

5. Under Section 1717–A(d) of the CSL, "the local board of school directors ... [must] hold at least one public hearing on the provisions of the charter application" within forty-five days of the application's receipt. 24 P.S. § 17–1717–A(d).

health and safety plans are absent. Furthermore, the property and facilities must meet the legal requirements.

(School Board's Opinion at 3). SVCC, thereafter, began the process to become eligible to appeal the School Board's decision to the CAB.

Pursuant to Section 1717–A(i)(2) of the CSL, 24 P.S. § 17–1717–A(i)(2), SVCC obtained the requisite number of signatures needed to perfect its appeal,[6] and, on March 19, 1999, it submitted its petition to appeal with the Court of Common Pleas of Clinton County for a determination of whether its appeal was sufficient. On April 13, 1999, pursuant to Section 1717–A(i)(5) of the CSL, 24 P.S. § 17–1717–A(i)(5), the Common Pleas Court decreed that SVCC's petition to appeal was sufficient and the decree was forwarded to the CAB.[7]

By letter dated May 4, 1999, counsel for the CAB acknowledged receipt of the petition to appeal and informed counsel for Keystone and counsel for SVCC that the appeal had been filed, docketed, assigned a docket number and would be held in abeyance until all members of the CAB were appointed.

By letter dated May 26, 1999, counsel for the CAB informed counsel for SVCC that it must prepare and file "a perfected petition to appeal" with the CAB and that no appeal would be accepted until July 1, 1999.[8] (R.R. at 233a). On July 1, 1999, SVCC filed its "perfected petition to appeal" with the CAB, and the CAB appointed a hearing examiner to conduct a hearing.

On July 16, 1999, Keystone filed an Answer, New Matter and Motion to Dismiss SVCC's appeal, alleging numerous procedural and substantive issues. On July 27th, SVCC filed its Reply to New Matter along with a supporting memorandum of law. The CAB ultimately ruled that SVCC's appeal was not deficient in any manner that would necessitate its dismissal.

On August 18, 1999, the CAB's vote on whether to affirm or reverse the School Board's decision denying SVCC's application resulted in a 3–3 tie. This vote was ultimately considered as "no action," and a revote was taken at the CAB's August 27, 1999, meeting. At this meeting, the CAB voted 4–1 to reverse the School Board's denial of SVCC's application and then ordered Keystone to grant the application and sign SVCC's charter.[9] The CAB ar-

---

6. Section 1717–A(i)(2) of the CSL provides, in pertinent part:

In order for a charter school applicant to be eligible to appeal the denial of a charter by the local board of directors, the applicant must obtain the signatures of at least two per centum of the residents of the school district or of one thousand (1,000) residents, whichever is less, who are over eighteen (18) years of age.
24 P.S. § 17–1717–A(i)(2).

7. Section 1717–A(i)(5) of the CSL provides, in pertinent part:

If the required number of signatures are obtained within sixty (60) days of the denial of the application, the applicant may present the petition to the court of common pleas of the

county in which the charter school would be situated.... The court shall issue a decree establishing the sufficiency or insufficiency of the petition. If the petition is sufficient, the decree shall be transmitted to the State Charter School Appeal Board for review in accordance with this section.
24 P.S. § 17–1717–A(i)(5).

8. Under Section 1717–A(f) of the CSL, "[n]o appeal from a decision of a local school board may be taken until July 1, 1999." 24 P.S. § 17–1717–A(f).

9. Section 1717–A(h) provides, in pertinent part, as follows:

A decision by the appeal board ... to grant, to renew or not to revoke a charter shall serve

ticulated the reasons for its determination in a written decision and order issued on November 22, 1999, basing its decision on its own findings of fact and conclusions of law made after an independent review of the School Board's findings and conclusions. Keystone filed an appeal of the CAB's decision and order with this Court, and we now consider the various issues raised therein.[10]

### A. The CAB's initial 3–3 vote

As already related, on August 18, 1999, the CAB's vote resulted in a 3–3 tie as to whether to affirm or reverse the School Board's decision to deny SVCC its request for a charter. Keystone argues that the CAB erred by categorizing the tie vote as "no action,"[11] thereby resulting in neither an acceptance nor a rejection of the School Board's decision to deny SVCC's application and tabling the issue until August 27, 1999, when a revote resulted in a 4–1 vote to reverse the determination of the School Board. Keystone maintains that, since the CAB is an administrative body acting in its *appellate* jurisdiction, a tie vote should be determined to constitute a binding affirmance of the lower tribunal, rather than the **absence** of a

decision. Keystone cites this Court's decision in *Crossgates Inc. v. Board of Commissioners of Public Grounds and Buildings*, 145 Pa.Cmwlth. 339, 603 A.2d 276, aff'd, 535 Pa. 420, 635 A.2d 1040 (1992), in support of its position.

In response, SVCC argues that it was proper for the CAB to table the issue and revote at a later meeting. SVCC points to the language of the CSL and maintains that a majority of the CAB is required to act, and, because three members was not a majority, it was proper to revote in order to obtain a clear majority one way or the other. SVCC cites *Energy Pipeline Co. v. Pennsylvania Public Utility Commission*, 541 Pa. 252, 662 A.2d 641 (1995) in support of its position.[12]

We begin by analyzing the voting provision contained in the CSL. Section 1721–A(b) provides that

[t]he appeal board shall meet as needed to fulfill the purposes provided in this subsection. A majority of the members of the appeal board shall constitute a quorum, and a *majority* of the members of the appeal board shall have authority to act upon any matter properly before the appeal board. The appeal board is

---

as a requirement for the local board of directors of a school district or school districts, as appropriate, to sign the written charter of the charter school as provided for in section 1720–A.
24 P.S. § 17–1717–A(h). ·

**10.** We are obliged to affirm the CAB's determination unless this Court determines that the adjudication is in violation of constitutional rights, is not in accordance with the law, or is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Shenango Valley Reg'l Charter Sch. v. Hermitage Sch. Dist. and Sharon City Sch. Dist.*, 756 A.2d 1191 (Pa.Cmwlth. 2000).

**11.** The CAB originally considered this vote as an affirmance, but later decided to reconsider

the application in order to obtain a majority vote.

**12.** Pursuant to Section 1717–A(i)(8) of the CSL, 24 P.S. § 17–1717–A(i)(8), the CAB must issue a *written decision within sixty days* following its review of a matter before it. Here, however, the CAB issued its decision on November 22, 1999, in excess of sixty days from August 27, 1999, the date of the final hearing on SVCC's application. While the sixty-day time limit has been held to be mandatory, *Shenango Valley*, none of the parties, including the amici curiae, have adequately raised the issue of the CAB's failure to render a timely decision and, specifically, have not addressed what remedy there might be for its failure. This issue is, thus, deemed waived.

authorized to establish rules for its operation.

24 P.S. § 17–1721–A(b) (emphasis added). It is clear from the language of the statute that the CAB must have a majority of its members to act or decide any issue properly before it. For example, the CAB, which consists of six members, may hear an appeal with only four members considering it; however, it cannot reach a decision unless all four members agree.

In *Energy Pipeline,* the Pennsylvania Supreme Court determined that a tie vote of the Public Utility Commission did not constitute a final action creating a final order from which an appeal could have been taken. In that case, the Commission, which, at the time, consisted of four members, voted on a matter and reached a 2–2 tie. Upon an immediate revote, they reached another 2–2 tie. The Chairman declared that they had taken "no action" and the matter was tabled for further consideration. Six months later, when only three commissioners were present, they tried again, and, this time, the commissioners unanimously voted to sustain the complaint against an entity providing public utility service. The Supreme Court eventually decided that Section 301(d) of the Public Utility Code, 66 Pa.C.S. § 301(d), required a quorum, or three, commissioners to vote unanimously. The Court thus held that a 2–2 vote was not a majority to adopt or deny any action and that no final action was taken, or order entered, at the time of the tie votes, and that the third vote was the effective vote.

In the case at bar, the 3–3 tie vote on August 18, 1999, was ultimately considered as "no action" by the CAB. There is nothing in the CSL that precludes the CAB from tabling a matter for further consider-

ation for *any* reason; **since a quorum of the appeal board is necessary to act on any matter before it,** 24 P.S. § 17–1721–A(b), the tie vote could not have served as an affirmance of the decision below, and *Crossgates* is not applicable.[13] Moreover, the CAB did not enter an order until after the second vote, so there would have been no order from which an appeal could have been taken until that time. Therefore, because the CAB ultimately reached a vote that broke the deadlock, and, since the CAB entered an order based upon that vote, the CAB sufficiently resolved the matter.

### B. *Premature Appeal*

 Keystone next argues that the CAB erred by failing to quash or dismiss SVCC's appeal as premature. Keystone bases this argument on Section 1717–A(f) of the CSL, which provides, in relevant part, as follows:

> At the option of the charter school applicant, a denied application may be revised and resubmitted to the local board of school directors. Following the appointment and confirmation of the Charter School Appeal Board under section 1721–A, the decision of the local board of school directors may be appealed to the appeal board.... No appeal from a decision of a local school board may be taken until July 1, 1999.

24 P.S. § 17–1717–A(f). Keystone maintains that SVCC filed its petition to appeal prior to the formation of the CAB and prior to July 1, 1999, thereby violating the clear terms of the CSL. Keystone refers to the May 4, 1999, letter from counsel for the CAB that acknowledged receipt of SVCC's petition to appeal. Keystone thus asserts that the CAB accepted SVCC's

---

**13.** In *Crossgates,* this Court held that a split vote (1–1) of the Board of Commissioners of Public Grounds and Buildings as to whether to approve or disapprove a proposed lease amounted to a **refusal** to take action, and, hence, a denial of the proposed lease.

appeal before the July 1, 1999, deadline in violation of the CSL.

The CAB specifically addressed this issue, and stated the following:

> [T]he CAB could not accept appeals until July 1, 1999, and therefore, the May 4, 1999 letter from counsel by its very language acknowledged receipt of the decree from the Court of Common Pleas, which decree found the petition filed with the Court to have been sufficient. This simply made SVCC **eligible to appeal**.... Only after the CAB members were sworn in on July 1, 1999 could the CAB accept appeals, which is when SVCC's appeal was filed and accepted.

(CAB's Opinion at 5) (citation omitted). The May 4, 1999, letter also stated that "the appeal [would] be held in abeyance until the remaining members of the State Charter School Appeal Board [were] appointed." (R.R. at 231a). In addition, the May 26, 1999, letter from the CAB's counsel to the parties indicated that the CAB would not accept any appeal prior to July 1, 1999, and it instructed SVCC to perfect its appeal on that date. (R.R. at 233a). It is clear from the evidence in the record that the CAB did not formally accept SVCC's appeal or review the denial of the application until July 1, 1999.

We recently addressed this exact issue in *West Chester Area School District v. Collegium Charter School*, 760 A.2d 452 (Pa.Cmwlth.2000), *petition for allowance of appeal granted*, 566 Pa. 674, 782 A.2d 552 (2001). In *West Chester*, the Collegium Charter School began the appeal process prior to July 1, 1999, but the CAB did not formally review the appeal until July 1, 1999. We stated that, "by taking this course of action, the CAB adopted a suitable means of allowing applicants affected by the CSL's two-year moratorium on appeals ... to take a timely appeal that offended neither the letter nor the spirit of the statutory restriction." *Id.* at 458 (footnote omitted).

Keystone also argues that, until the CAB formally existed, the local board of directors and applicants should have proceeded as if there were no provision for an appeal to the CAB. Keystone, therefore, suggests that SVCC should have either submitted a revised application to the School Board or made a timely appeal to the Court of Common Pleas of Clinton County. We disagree. As we stated in *West Chester*:

> The CSL provides a right of appeal to a charter school applicant denied a charter by the local school board, 24 P.S. § 17–1717–A(i)(2) to 17–1717–A(i)(5), and, although no appeal may be taken *until* July 1, 1999, 24 P.S. § 17–1717–A(f), nothing in the CSL eliminates the statutorily-granted appeal right for Affected Applicants.

760 A.2d at 458–459 (emphasis in original). We also stated in *West Chester*:

> [t]he CSL clearly provides revision and resubmission of a charter school application as an *option* for the rejected charter applicant. To hold as Petitioners urge [*i.e.*, that the charter school's sole remedy was resubmission of its application to the school board] would nullify this choice for an Affected Applicant because, in choosing not to resubmit its application, the applicant would involuntarily forfeit its right to appeal.

760 A.2d at 459 (emphasis in original) (citation omitted) (footnote omitted). We believe, therefore, that the General Assembly simply intended to delay the appeal process, not to deny applicants the right to appeal to the CAB altogether. *Id.* In making this statement, we note that Section 1717–A(i)(1) of the CSL, 24 P.S. § 17–1717–A(i)(1), provides that the CAB shall have "exclusive review" of an appeal by a

charter school applicant from a school board's decision not to grant a charter.

◼ Finally, Keystone argues that the CSL does not allow any school board decision denying charter applications made prior to July 1, 1999 to be brought before the CAB. This argument has no merit. We agree with the CAB that there is nothing in the CSL that prohibits the CAB from accepting an appeal of a local school board decision made prior to July 1, 1999. Section 1717–A(f) of the CSL merely provides that no appeal from a local school board decision may be taken until July 1, 1999. Again, we do not believe that the General Assembly intended to preclude applicants for a charter from exercising their right to appeal, but simply intended that there be a delay in the appeal process. Accordingly, for all the reasons stated, we conclude that the CAB acted properly in refusing to dismiss SVCC's appeal.

## C. *The CAB's Scope/Standard of Review*

◼ Keystone argues that the CAB's standard of review when considering a local board of school directors' decision is "due consideration." Keystone maintains that due consideration is an appellate standard of review wherein great deference is granted to the lower tribunal, and that the CAB should, therefore, merely review the record without substituting its discretion for the School Board's discretion. Keystone contends that the CAB should affirm the School Board's decision unless it is not supported by substantial evidence or the School Board abused its discretion, and that the CAB erred in conducting an independent review of the School Board's findings and conclusions. We disagree that the "due consideration" required by the statute necessitates such great deference.

Section 1717–A(i)(6) of the CSL specifically provides that

[i]n any appeal, the decision made by the local board of directors shall be reviewed by the appeal board on the record as certified by the local board of directors. The appeal board shall give *due consideration* to the findings of the local board of directors and specifically articulate its reasons for agreeing or disagreeing with those findings in its written decision. The appeal board shall have the discretion to allow the local board of directors and the charter school applicant to supplement the record if the supplemental information was previously unavailable.

24 P.S. § 17–1717–A(i)(6) (emphasis added). We believe that this section confers on the CAB *de novo* review of the charter school's application. The CAB is required to **"specifically articulate its reasons for agreeing *or disagreeing* "** with the findings of the School Board. *Id.* (emphasis added). As we stated in *West Chester,* "[b]y giving the CAB the right to disagree with the local school board and requiring it to specifically articulate its reasons for doing so, the General Assembly has unquestionably granted the CAB the authority to substitute its own findings and independent judgment for that of the local school board." *West Chester,* 760 A.2d at 461.

◼ It is well settled that an abuse of discretion standard precludes a reviewing court from substituting its own judgment for that of the lower tribunal. When applying an abuse of discretion standard, an appellate court is bound by the findings of fact of the lower court if supported by substantial evidence. As we stated in *Gwynedd Development Group, Inc. v. Department of Labor and Industry, Bureau of Labor Standards,* 666 A.2d 365 (Pa. Cmwlth.1995), *petition for allowance of appeal granted in part,* 544 Pa. 218, 675 A.2d 1220 (1996), "[t]he fact that the reviewing court may have a different opinion

is not sufficient to interfere with the agency's action and judicial discretion may not be substituted for administrative discretion." *Id.* at 370.

■■■ However, it is clear that, under the provisions of the CSL, the CAB has the power to disagree with the findings of the local board of directors, which is consistent with a *de novo* review, rather than with an abuse of discretion standard. The CAB must *consider* the local school board's decision, of course, but it ultimately has the authority to disagree with its findings. If this occurs, the CAB must explain its reasons for disagreeing in a written decision, which is what occurred in this case.

The Pennsylvania School Board Association, *amicus curiae,* along with Keystone, argues that the local school board's decision should be upheld unless the board acted arbitrarily in denying the application. This, however, is inconsistent with the statutory language of the CSL, which confers upon the CAB the authority to agree or disagree with the School Board's findings. The General Assembly clearly intended that the CAB conduct a *de novo* review, rather than limit its review simply to a determination of whether the local school board abused its discretion. Based upon the plain language of Section 1717–A(i)(6), the CAB did not err in conducting a *de novo* review of the School Board's decision.

■■■ Having decided that the CAB applied the proper scope of review, we must determine whether the CAB's findings of fact are supported by substantial evidence, which is the standard of review of this Court. As we stated above, the local board of directors and the CAB are required to evaluate a charter school application based on the criteria set forth in Section 1717–A(e)(2) of the CSL. In its review, the CAB identified the following four areas that the School Board utilized in denying SVCC's application: curricular issues, community support, and facility, which are identified as specific criteria in the CSL, and financial planning, which is not specifically enumerated.

We reviewed the CAB's opinion and the record in this case, and determine that the CAB's findings were supported by substantial evidence. The CAB enumerated twenty-three findings of fact, and articulated the reasons it disagreed with the School Board's decision to deny the application. The CAB specifically found that Sugar Valley had set forth a curriculum that would provide a comprehensive learning experience for students and that its student recruitment plan showed continued support for the proposed charter school. In addition, the CAB found that Sugar Valley's comprehensive five-year financial management plan was sound[14] and that it was actively pursuing a new facility, and that the application should not have been denied on that basis because Sugar Valley was willing to delay the opening of the school until a proper facility was located.

It is clear that the CAB properly gave "due consideration" to the School Board's decision, as is evident by the CAB's thorough discussion of the issues involved, and, in disagreeing with the School Board, the

---

**14.** One of the reasons the School Board denied Sugar Valley's application is based on the perceived notion that it would have a negative effect on the taxpayers in the school district. The CAB concluded that it was improper for the School Board to deny Sugar Valley's application, in part, on this basis.

We agree. The General Assembly specifically provided that the funding for charter schools shall come from school district revenues. To deny the charter school because it may deplete school district revenues is inconsistent with the purpose of the CSL.

CAB's decision is clearly supported by the evidentiary record. Accordingly, we conclude that the CAB did not commit an error of law or abuse its discretion.

For all of the foregoing reasons, we affirm the CAB's order reversing the denial of SVCC's charter application by the School Board.

### ORDER

**NOW,** *May 21, 2002,* the order of the State Charter School Appeal Board in the above-captioned matter is hereby affirmed.