| | | |
|---|---|---|
| Propel Charter Schools, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Education; State Charter | : | |
| School Appeal Board; Pittsburgh Public | : | |
| Schools, | : | No. 710 M.D. 2019 |
| Respondents | : | Argued: October 13, 2020 |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COVEY                                                    FILED:  November 20, 2020

Before this Court are the preliminary objections (Preliminary Objections) filed by the Pennsylvania Department of Education (PDE), the State Charter School Appeal Board (CAB) and the School District of Pittsburgh (District) (collectively, Respondents) to Propel Charter Schools' (Propel) Petition for Review in the Nature of a Declaratory Judgment Complaint (Petition) filed in this Court's original jurisdiction.

**Facts**

Propel is a Pennsylvania nonprofit corporation that operates a number of individual charter schools in Pennsylvania. *See* Petition at 1, ¶ 1.  On May 4, 2018, Propel filed an Application for Consolidation (Application) with the District, wherein

Propel sought to consolidate eight Propel charter schools[1] as a single Multiple Charter School Organization (MCSO) pursuant to Section 1729.1-A of the Charter School Law (CSL),[2] 24 P.S § 17-1729.1-A. *See* Petition at 4, ¶ 9. On May 7, 2018, Propel also submitted the Application to PDE. *See id*., ¶ 11. On June 20, 2018, PDE issued a letter denying Propel's Application. *See id*., Ex. 3, Decision on Motion to Allow Vote of 3-1 as Proper, CAB Docket No. 2018-06 (Decision on PDE Motion) at 1. On June 25, 2018, the District issued a notice of denial of the Application. *See id*., Ex. 3, Decision on Motion to Allow Vote of 3-1 as Proper, CAB Docket No. 2018-05, (Decision on District Motion) at 1. On July 16, 2018, Propel appealed from the denials to CAB. *See id*. at 5, ¶ 15.

CAB consists of seven members: "the [PDE] Secretary . . . and six [] members who shall be appointed by the Governor by and with the consent of a majority of all the members of the Senate." Section 17-1721-A(a) of the CSL, 24 P.S. § 17-1721-A(a). However, due to a long-standing vacancy, there are currently only six sitting CAB members. Consequently, because the CSL defines a quorum as "[a] majority of the members of [CAB]," 24 P.S § 17-1721-A(b), four members constitute a quorum.

The PDE Secretary appointed a Hearing Officer in the matter. On January 18, 2019, the District filed a Motion to Supplement the Record. *See* Decision on District Motion at 1-2. On January 29, 2019, PDE filed a Motion to Supplement the Record (collectively, Motions to Supplement). *See* Decision on PDE Motion at 1. On February 8, 2019, Propel filed a Brief in Opposition thereto. On March 19, 2019,

---

[1] The individual schools are: Propel Charter School - Homestead; Propel Charter School - East; Propel Charter School - McKeesport; Propel Charter School - Montour; Propel Charter School - Sunrise (operating as Propel Charter School - Braddock Hills); Propel Charter School - Northside; Propel Charter School - Pitcairn; and Propel Charter School - Hazelwood.

[2] Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17-1701-A – 17-1751-A. Section 1729.1-A of the CSL was added by Section 10 of the Act of November 6, 2017, P.L. 1142.

the Hearing Officer granted the Motions to Supplement. *See* Decision on District Motion at 2; Decision on PDE Motion at 1. On March 28, 2019, Propel filed a direct appeal to CAB from the Hearing Officer's March 19, 2019 order. *See id.*

Both the appeal from the Hearing Officer's March 19, 2019 order and the direct substantive appeal were argued before CAB on May 21, 2019. *See id.*; *see also* Petition at 5, ¶ 16. Prior to the May 21, 2019 hearing, CAB Member Lee Ann Munger (CAB Member Munger) recused herself from participating in both appeals because her children attend Propel. *See* Petition at 5, ¶ 17. Additionally, the PDE Secretary also recused himself from both appeals. *See id.* at 6, ¶ 18. Thereafter, CAB voted 4-0 to deny Propel's appeal from the Hearing Officer's order allowing the record to be supplemented, and the matter proceeded to argument. *See* Decision on District Motion at 2; Decision on PDE Motion at 2.

At its June 18, 2019 meeting, CAB noted for the record that CAB Member Munger and the PDE Secretary recused themselves at the May meeting, *see* Petition at 6, ¶ 20, leaving a sufficient number of CAB members to constitute a quorum. At the June meeting, CAB voted 3-1 to deny Propel's substantive appeals from the denials of Propel's Application. *See id.*, ¶ 21. However, because a majority of the six CAB members did not vote unanimously, CAB determined that the 3-1 vote did not constitute a valid CAB action. *See id.*, ¶ 22. CAB tabled the matter for a revote at the next CAB meeting in July. *See id.* at 7, ¶ 23.

On July 24, 2019, with the PDE Secretary's and CAB Member Munger's recusals, the same four CAB members again voted on the substantive appeal, resulting in another 3-1 vote, which CAB did not recognize as a valid CAB action. *See id.*, ¶¶ 24-28. CAB once more tabled the matter. *See id.* at 8, ¶ 33. On September 6, 2019, Propel filed a Motion to Permit CAB Member Munger to Vote (Motion to Permit CAB Member Munger to Vote). *See* Decision on District Motion at 2. CAB counsel held a conference call with all of the parties to discuss Propel's

Motion to Permit CAB Member Munger to Vote. *See id*. On September 16, 2019, PDE filed its response in opposition thereto. *See id*. Propel withdrew its Motion to Permit CAB Member Munger to Vote on September 25, 2019. *See id*.

On September 25, 2019, Propel filed a Motion to Allow the Vote of 3-1 as Proper with CAB (Motion). *See id*. at 9, ¶ 34. Therein, Propel argued that the CSL does not require a majority vote of all CAB members to decide the matter before the quorum, and, even if the CSL requires such, the recusals effectively reduced the total number of CAB members. *See id*., ¶ 34. On October 7, 2019, PDE filed its response thereto.

At the October 22, 2019 CAB meeting, CAB denied the Motion, revoted on the appeals and, once again, voted 3-1 to deny Propel's substantive appeal. *See id*., ¶¶ 36-38. CAB tabled the matters for revote at the next CAB meeting on December 3, 2019. *See id*. at 9-10, ¶ 38. On November 27, 2019, CAB issued written orders in both docketed matters denying the Motion (November 27, 2019 Order). *See id*. at 10, ¶ 39.

According to Propel, "it is believed" that, at the December 3, 2019 meeting, CAB revoted on Propel's matters, which resulted in the same 3-1 vote, and as before, CAB treated the vote as a non-action. *Id*. at 10, ¶ 40. Propel also avers in the Petition that CAB intended to again revote at its January 14, 2020 meeting,[3] and that the appeals are still pending. *See id*. at 10, ¶¶ 41-42.

On December 26, 2019, Propel filed its Petition in this Court's original jurisdiction seeking a declaration that the CAB votes and revotes were proper, and an order for CAB to promptly issue a written decision.

On February 3, 2020, the District filed preliminary objections to the Petition. On February 6, 2020, PDE filed its preliminary objections. On March 3,

---

[3] PDE acknowledges in its brief that CAB voted to deny the appeals by the same 3-1 vote at both the December 3, 2019, and January 14, 2020 CAB meetings.

2020, CAB also filed preliminary objections to the Petition. Each of the Respondents' Preliminary Objections asserts that: (1) Propel failed to exhaust its administrative remedies; and (2) the pleadings are legally insufficient.

Initially,

> [i]n reviewing [preliminary objections], we apply the following standards. 'In ruling on preliminary objections, the courts must accept as true all well-pled facts that are material and all inferences reasonably deducible from the facts.'[4] *Guarrasi v. Scott*, 25 A.3d 394, 400 n.5 (Pa. Cmwlth. 2011). However, we 'are not required to accept as true any unwarranted factual inferences, conclusions of law or expressions of opinion.' *Id.* To sustain preliminary objections, 'it must appear with certainty that the law will permit no recovery' and '[a]ny doubt must be resolved in favor of the non-moving party.' *Id.*

*Pa. Indep. Oil & Gas Ass'n v. Dep't of Envtl. Prot.*, 135 A.3d 1118, 1123 (Pa. Cmwlth. 2015).

I.  **Exhaustion of Administrative Remedies.**

Respondents object to the Petition on the basis that Propel has failed to exhaust available statutory remedies before CAB, and that such failure deprives this Court of jurisdiction.

> The doctrine of exhaustion of administrative remedies requires that a person challenging an administrative decision must first exhaust all adequate and available administrative remedies before seeking relief from the courts. The purposes of this exhaustion requirement are to prevent premature judicial intervention in the administrative process and ensure that claims will be addressed by the body with expertise in the area. Thus, where the legislature has provided an administrative procedure to challenge and

---

[4] "[C]ourts reviewing preliminary objections may not only consider the facts pled in the [petition for review in the nature of a] complaint, but also any documents or exhibits attached to it." *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014).

obtain relief from an agency's action, failure to exhaust that remedy bars this Court from hearing claims for declaratory or injunctive relief with respect to that agency action.

*Funk v. Dep't of Envtl. Prot.*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2013) (citations omitted).

Our Supreme Court has instructed that[,] where the General Assembly has

seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise and broad regulatory and remedial powers to administer that statutory scheme, a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency. Full utilization of the expertise derived from the development of various administrative bodies would be frustrated by indiscriminate judicial intrusions into matters within the various agencies' respective domains.

*Feingold v. Bell of P*[a.], . . . 383 A.2d 791, 793 ([Pa.] 1977). Our Supreme Court also noted that '[a]s with all legal rules,' this one is not inflexible. *Id.* **A court may exercise jurisdiction where the administrative remedy is not adequate**. *Id.* '**The mere existence of a remedy does not dispose of the question of its adequacy**; **the administrative remedy must be 'adequate and complete**.'' *Id.* at 794 (citation omitted). Where a statutory procedure would be of 'little, if any, utility,' it may be bypassed. *Borough of Green Tree v. B*[d.] *of Prop*[.] *Assessments*, . . . 328 A.2d 819, 825 ([Pa.] 1974).

*Sunrise Energy, LLC v. FirstEnergy Corp.*, 148 A.3d 894, 902 (Pa. Cmwlth. 2016) (emphasis added).

'[A]n administrative remedy is inadequate if it either: (1) does not allow for adjudication of the issues raised . . . or (2) allows irreparable harm to occur to the plaintiffs during the pursuit of the statutory remedy.' [*Commonwealth ex rel. Nicholas v. Pa. Labor Relations Bd.*,] 681 A.2d [157,]

6

161 [(Pa. 1996)]. A party claiming this exception must make a 'clear showing that the remedy is inadequate.' *Commonwealth v. Eisenberg*, . . . 454 A.2d 513, 515 ([Pa.] 1982).

*Keystone ReLeaf LLC v. Dep't of Health*, 186 A.3d 505, 517 (Pa. Cmwlth. 2018). The adequacy of CAB's administrative remedy is directly at issue in this matter.

This Court previously addressed similar claims that a charter school failed to exhaust administrative remedies where the charter school was subjected to significant delay in obtaining a remedy from PDE and sought relief in this Court's original jurisdiction. In *Arts Academy Charter School v. Commonwealth* (Pa. Cmwlth. No. 50 M.D. 2016, filed June 8, 2018),[5] this Court explained:

> The Charter Schools [consisting of several charter schools including the Chester Community Charter School (CCCS)] filed the original petition in [this Court in] February 2016 in response to [PDE's and the PDE Secretary's] January 2016 Notice that they would not be paid [because the mandatory withholding requirements of [S]ection 1725-A(a)(5) of the CSL apply only to claims on current year funding]. Despite [PDE's and the PDE Secretary's] knowledge in April 2016 that CCCS' 2014-2015 reconciliation claim amount was undisputed and [the school district] did not pay it, [**PDE and the PDE Secretary**] **violated Section 1725-A(a)(5) of the CSL by not withholding** [**the school district's**] **funds**. Although [PDE and the PDE Secretary] informed the parties that they were entitled to a hearing, the administrative proceeding was not scheduled until August 2016, **one year after CCCS requested its funds**, and no decision was forthcoming for **another nine months** - on May 25, 2017 - *after* this Court issued *Richard Allen* [*Preparatory Charter School v. Department of Education*, 161 A.3d 415 (Pa. Cmwlth. 2017), *aff'd per curiam*, 185 A.3d 984 (Pa. 2018)] and *KIPP* [*Philadelphia Charter Schools v. Department of Education*, 161 A.3d 430 (Pa. Cmwlth. 2017), *aff'd per curiam*, 185 A.3d 984 (Pa. 2018)]. Even then, the Secretary did not apply this Court's *Richard*

---

[5] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent. *Arts Academy* is cited for its persuasive value.

> *Allen* and *KIPP* rulings. Thus, while CCCS attempted to exhaust its administrative remedies, it was at all times at [the school district's] and [PDE's and the PDE Secretary's] mercy.

*Arts Acad.*, slip op. at 22-23 (citations omitted). The Court further opined:

> Were this Court to adopt [PDE's and the PDE Secretary's] position that this Court lacked jurisdiction until CCCS' administrative remedies were exhausted in May 2017, CCCS' cause of action would be hamstrung for as long as [PDE and the PDE Secretary] chose not to act. The sudden and retroactive effect of the [PDE's] January 2016 Notice and its extended delay in conducting a hearing and rendering a decision, left CCCS without means to obtain funding to which it was statutorily entitled, and/or require [the school district] and [PDE and the PDE Secretary] to remedy the situation. Under such circumstances, we hold that CCCS exhausted its administrative remedies, and this Court has jurisdiction over its declaratory relief claim.

*Arts Acad.*, slip op. at 23-24.

> Similarly, here, Propel is at CAB's mercy. PDE acknowledges that

> [w]hile CAB has not been able to form a majority of the sitting members in each of the 3-1 votes in this matter, it is not because there are not enough members to get to the four necessary votes. Rather **CAB has not been able to form a majority of the sitting members** because there is a difference of opinion among the CAB members.

PDE Br. at 18 (emphasis added; citation omitted). Notwithstanding, the result is the same. Despite voting on June 18, 2019, July 24, 2019, October 22, 2019, December 3, 2019, and January 14, 2020, CAB was unable to render a decision on the application because it concluded that the 3-1 vote was not valid. Propel has waited more than two years for a decision on its application, and CAB has been unable to render one. Thus, the remedy here "does not allow for adjudication of the issues raised[.]" *Keystone*, 186 A.3d at 517. Accordingly, the statutory administrative remedy available to Propel is **inadequate**. *See Sunrise Energy*. This Court will not

8

continue to thwart Propel's efforts by holding that it has failed to exhaust its administrative remedies where the Board has been unable to form a majority and render a decision on Propel's application for over two years. Therefore, this Court overrules Respondents' Preliminary Objections alleging that Propel failed to exhaust its administrative remedies.[6]

## II.        Legal Insufficiency/Demurrer

Respondents next object to the Petition on the basis that Propel's Petition is legally insufficient because the plain language of Section 1721-A(b) of the CSL and precedent make clear that a majority of CAB members form a quorum, and a majority of CAB members have the authority to act.

In response, Propel argues CAB's 3-1 vote was proper. Specifically, Propel contends that the common law rule applies to CAB and, pursuant to the common law rule, where a majority of the quorum votes in favor of a particular decision, that decision constitutes a final action. Thus, Propel asserts that the two recused CAB members did not count toward a quorum to meet the voting requirement. Respondents rejoin that this Court must dismiss the Petition based on the plain meaning of Section 1721-A(b) of the CSL.

Initially,

'[a] demurrer may only be sustained when on the face of the complaint the law will not permit recovery.' *Doxsey v.*

---

[6] PDE contends in its brief that, on December 18, 2019, Propel filed an Application Pursuant to Pennsylvania Rule of Appellate Procedure 1311 to Amend Order to Include Language Required under 42 Pa.C.S. § 702(b) (Application to Amend Order), requesting that CAB permit an interlocutory appeal of CAB's November 27, 2019 order. It notes that, before CAB could issue its decision thereon, Propel filed the instant action in this Court. Thus, PDE argues that Propel "cut off a potentially available avenue for judicial review of the November 27, 2019 order." PDE Br. at 20. Because this Court is limited to the facts pled in the Petition and the exhibits thereto, and there is no reference to the Application to Amend Order or the attached exhibits, the Court cannot consider the argument. *See Richard Allen.*

9

*Commonwealth*, 674 A.2d 1173, 1174 (Pa. Cmwlth. 1996). When ruling on a demurrer, this Court must consider as true all well-pleaded relevant and material facts, as well as all reasonable inferences deducible therefrom.

*Hackett v. Horn*, 751 A.2d 272, 274 (Pa. Cmwlth. 2000).

Section 1721-A(b) of the CSL provides:

[CAB] shall meet as needed to fulfill the purposes provided in this subsection. **A majority of the members of [CAB] shall constitute a quorum, and a majority of the members of [CAB] shall have authority to act upon any matter properly before [CAB].** [CAB] is authorized to establish rules for its operation.

24 P.S § 17-1721-A(b) (emphasis added).

Respondents cite *Keystone Central School District v. Sugar Valley Concerned Citizens*, 799 A.2d 209 (Pa. Cmwlth. 2002), to support their position. The *Keystone* Court determined that a 3-3 vote was not a valid CAB action because a majority of CAB did not agree. Therein, CAB tabled a 3-3 vote as a non-decision, and did not enter an order until the next vote when the deadlock was broken. The issue before the Court was whether a 3-3 tie constituted an affirmance or was simply the absence of a decision. The *Keystone* Court held that, "because [] CAB ultimately reached a vote that broke the deadlock[] and, since [] CAB entered an order based upon that vote, [] CAB sufficiently resolved the matter." *Keystone*, 799 A.2d at 215. Accordingly, *Keystone* is distinguishable and thus inapposite.

Propel maintains that this Court should apply the common law rule and, in support, cites *Ronald H. Brown Charter School v. Harrisburg City School District*, 928 A.2d 1145 (Pa. Cmwlth. 2007), wherein this Court explained:

Unless there is contrary legislative intent to the common law rule requiring a vote of a full body to be valid, **all that is needed is a majority of a quorum to take action**; not that all the members of the Board must vote who are authorized but are not seated.

10

*Id.* at 1147 (emphasis added). The *Ronald H. Brown Charter School* Court further found that "nothing in Section 1721-A of the [CSL] indicates that the General Assembly intended to abrogate the common law rule that a majority is determined by the number currently serving, not the total number of appointments that could be made to [CAB]." *Id.* at 1150.

> [O]ur Supreme Court explained the common law rule and the policy reasons behind the rule as follows:
>
>> In determining the number of votes necessary for a deliberative body to take official action, Pennsylvania follows the common law rule. Under the common law rule[,] so long as a quorum is present at a meeting, all that is required is that the highest vote be equal to a majority of the quorum number, even though the highest vote constitutes only a plurality of all the legal votes cast. This is true even if more than the quorum number is present at the meeting. For example, if there are seven members of a body and four of those members constitute a quorum and attend a meeting, a majority of the four, which would be three, is necessary to take official action of any kind. Even if all seven members, more than the necessary quorum of four, attend the meeting, the same number of votes, namely three, is all that is necessary to take official action if that is the highest number of votes cast (plurality) in a given matter. Thus, if the minimum quorum of four is present, and the vote on a particular proposal is 3 in favor and 1 against, the proposal is adopted. If all seven members of the body attend and the vote on a particular proposal is 3 in favor, 1 against and 3 abstentions, the proposal is likewise adopted by the plurality vote.

*Ronald H. Brown Charter Sch.*, 928 A.2d at 1147-48 (citations omitted) (quoting *DiGiacinto v. City of Allentown*, 406 A.2d 520, 522 (Pa. 1979)).

> Under this common law rule, in a seven-person body, the highest number of votes necessary to take official action is not dependent upon the fortuity of whether 4, 5, 6, or 7

11

members choose to attend the meeting **so long as the minimum quorum number is present**. If the rule were otherwise, a member could attend the meeting and abstain from voting and have a different effect than if that person were absent from the meeting. The common law rule does not permit a member to attend and abstain from voting and yet demand that the highest number of votes required to take official action be more than if that member had been absent. This Court has previously observed that a member who attends a meeting and abstains can have the same paralytic effect as one who is absent: '[O]ne or a relatively few persons could, by their intentional absence from, or by their presence at a meeting and their failure to vote, or their casting a blank or illegal ballot, block indefinitely an important election or important legislation and thus paralyze government with obviously great harm to the public interest.' *Meixell v. Borough Council of Borough of Hellertown*, . . . 88 A.2d 594, 596 [(Pa. 1952).]

*Ronald H. Brown Charter Sch.*, 928 A.2d at 1148 (emphasis omitted) (quoting *DiGiacinto*, 406 A.2d at 522 (emphasis added)).

It is well established that 'statutes are not presumed to make changes in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions.' *Carrozza v. Greenbaum*, . . . 916 A.2d 553, 566 ([Pa.] 2007) (quoting *Commonwealth v. Miller*, . . . 364 A.2d 886, 887 ([Pa.] 1976)). Thus, the Court will not disturb established legal principles without express direction from the [l]egislature. *Carrozza*, 916 A.2d at 565-66.

*Everhart v. PMA Ins. Grp.*, 938 A.2d 301, 307 (Pa. 2007). "In order to abrogate a common[ ]law principle, the statute must 'speak directly' to the question addressed by the common law." *In re Rodriguez*, 900 A.2d 341, 345 (Pa. 2003) (quoting *United States v. Texas*, 507 U.S. 529, 534 (1993)).

The question addressed by the common law rule is whether a quorum or a majority of the quorum is needed for a deliberative body to take official action. Section 1721-A(b) of the CSL states: "[a] majority of the members of [CAB] shall

12

constitute a quorum, and a majority of the members of [CAB] shall have authority to act upon any matter properly before [CAB]." 24 P.S § 17-1721-A(b). The first half of this sentence defines a CAB quorum, i.e., a majority of the CAB members is a quorum, and the second half of the sentence explains that the quorum is required in order for CAB *to act*. It directs CAB on how many members are required to hear an appeal, i.e., a quorum, but not how many members must agree *to decide* the appeal. Thus, Section 1721-A(b) is silent on the question of whether a quorum or a majority of the quorum is needed for CAB to decide the appeal. Because "nothing in Section 1721-A[(b)] of the [CSL] indicates that the General Assembly intended to abrogate the common[ ]law rule[,]" the common law rule applies. *Ronald H. Brown Charter Sch.*, 928 A.2d at 1150. Accordingly, it is not clear on the face of the Petition that the law will not permit recovery. *See Hackett.*

For all of the above reasons, Respondents' Preliminary Objections are overruled.

_____
ANNE E. COVEY, Judge

13

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Propel Charter Schools, :
                Petitioner :
                 :
        v. :
                 :
Commonwealth of Pennsylvania, :
Department of Education; State Charter :
School Appeal Board; Pittsburgh Public :
Schools, : No. 710 M.D. 2019
             Respondents :

## O R D E R

AND NOW, this 20th day of November, 2020, the preliminary objections (Preliminary Objections) filed by the Pennsylvania Department of Education, the School District of Pittsburgh and the State Charter School Appeal Board to Propel Charter School's (collectively, Respondents) Petition for Review in the Nature of a Declaratory Judgment Complaint are OVERRULED.

Respondents shall file their answers to Propel Charter Schools' Complaint within thirty (30) days of this Order.

_____

ANNE E. COVEY, Judge