# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Propel Charter Schools,　　　　　　：
　　　　　　　　Petitioner　　　　：
　　　　　　　　　　　　　　　　　：
　　　　　v.　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　：
Pennsylvania Department of Education　：
and State Charter School Appeal Board,　：　No. 1826 C.D. 2019
　　　　　　　　Respondents　　　　：　Argued:  October 13, 2020


BEFORE:　　HONORABLE ANNE E. COVEY, Judge
　　　　　　HONORABLE CHRISTINE FIZZANO CANNON, Judge
　　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE COVEY　　　　　　　　　　　　FILED:  November 20, 2020


Propel Charter Schools (Propel) petition this Court for review of the State Charter School Appeal Board's (CAB) November 27, 2019 order (Order) denying Propel's Motion to Allow Vote of 3-1 in this Matter as Proper (Motion). There are two issues before this Court: (1) whether CAB's Order is an appealable collateral order; and (2) whether CAB's 3-1 vote is proper.


## Facts

Propel is a Pennsylvania nonprofit corporation that operates a number of individual charter schools in Pennsylvania.  On May 7, 2018, Propel filed an Application for Consolidation (Application) with the Pennsylvania Department of Education (PDE), wherein Propel sought to consolidate eight Propel charter schools[1] as a single Multiple Charter School Organization (MCSO) pursuant to Section

---

[1] The individual schools are: Propel Charter School - Homestead; Propel Charter School - East; Propel Charter School - McKeesport; Propel Charter School - Montour; Propel Charter School - Sunrise (operating as Propel Charter School - Braddock Hills); Propel Charter School - Northside; Propel Charter School - Pitcairn; and Propel Charter School - Hazelwood.

1729.1-A of the Charter School Law (CSL),[2] 24 P.S § 17-1729.1-A. On June 20, 2018, the PDE issued a letter denying Propel's Application. On July 16, 2018, Propel appealed from the denial to CAB.

The PDE Secretary appointed a Hearing Officer in the matter. On January 29, 2019, PDE filed a Motion to Supplement the Record (Motion to Supplement). On February 8, 2019, Propel filed a Brief in Opposition thereto. On March 19, 2019, the Hearing Officer granted PDE's Motion to Supplement. On March 28, 2019, Propel filed a direct appeal to CAB from the Hearing Officer's order allowing the record to be supplemented. Both the appeal from the Hearing Officer's decision to permit PDE to supplement the record and the direct substantive appeal were argued before CAB on May 21, 2019. CAB voted 4-0 to deny Propel's appeal from the Hearing Officer's order allowing the record to be supplemented, and the matter proceeded to argument.

CAB consists of seven members: "the [PDE] Secretary . . . and six [] members who shall be appointed by the Governor by and with the consent of a majority of all the members of the Senate." Section 17-1721-A(a) of the CSL, 24 P.S. § 17-1721-A(a). However, due to a long-standing vacancy, there are currently only six sitting CAB members. Consequently, because the CSL defines a quorum as "[a] majority of the members of [CAB]," 24 P.S § 17-1721-A(b), four members constitute a quorum.

At CAB's June 18, 2019 meeting, CAB Member Lee Ann Munger (CAB Member Munger) recused from the vote because her children attend Propel. In addition, the PDE Secretary recused himself from the vote, leaving four CAB members, which was sufficient to constitute a quorum. CAB voted 3-1 to deny

---

[2] Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17-1701-A – 17-1751-A. Section 1729.1-A of the CSL was added by Section 10 of the Act of November 6, 2017, P.L. 1142.

Propel's substantive appeal from PDE's denial of Propel's Application. However, CAB tabled the matter because CAB determined, in accordance with its interpretation of the CSL, that the 3-1 vote did not constitute a valid CAB action, since a majority of the six CAB members did not vote unanimously. CAB tabled the matter for a revote at the next CAB meeting in July.

On July 24, 2019, with the PDE Secretary's and CAB Member Munger's recusals, the same four CAB members again voted on the substantive appeal resulting in another 3-1 vote, which CAB did not recognize as a valid CAB action. CAB once more tabled the matter. On September 6, 2019, Propel filed a Motion to Permit CAB Member Munger to Vote (Motion to Permit CAB Member Munger to Vote). CAB counsel held a conference call with all of the parties to discuss Propel's Motion to Permit CAB Member Munger to Vote. On September 16, 2019, PDE filed its response in opposition thereto. Propel withdrew its Motion to Permit CAB Member Munger to Vote on September 25, 2019.

Also on September 25, 2019, Propel filed the instant Motion. On October 7, 2019, PDE filed its response thereto. At the October 22, 2019 CAB meeting, the Motion was argued and voted upon by the same four participating CAB members who voted 4-0 to deny Propel's Motion resulting in the Order.[3] Propel appealed to this Court.[4] By January 16, 2020 order, this Court directed the parties to address the appealability of the November 27, 2019 Order in their principal briefs on the merits or other appropriate motion.[5]

---

[3] CAB issued its written decision on November 27, 2019.

[4] "Our review of [] CAB's decision is limited to determining whether constitutional rights were violated, whether [] CAB committed an error of law, or whether [] CAB's decision is supported by substantial evidence." *Insight PA Cyber Charter Sch. v. Dep't of Educ.*, 162 A.3d 591, 594 n.3 (Pa. Cmwlth. 2017).

[5] No other motion was filed.

3

## Collateral Order

Initially, Pennsylvania Rule of Appellate Procedure (Rule) 313 provides:

> **(a) General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
>
> **(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

> [T]he collateral order doctrine permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Rule 313(b). With regard to the first prong of the collateral order doctrine, an order is separable from the main cause of action if it is 'entirely distinct from the underlying issue in the case' and if 'it can be resolved without an analysis of the merits of the underlying dispute.' *Commonwealth v. Blystone*, . . . 119 A.3d 306, 312 ([Pa.] 2015) (internal quotation marks omitted).

*Support Ctr. for Child Advocs. v. Dep't of Hum. Servs.*, 189 A.3d 497, 500 (Pa. Cmwlth. 2018) (quoting *K.C. v. L.A.*, 128 A.3d 774, 778 (Pa. 2015)).

Here, the issue in the underlying dispute is whether PDE erred by denying Propel's Application, i.e., whether Propel was permitted to consolidate its charter schools as an MCSO. The November 27, 2019 Order currently before this Court denied Propel's Motion seeking to deem a 3-1 CAB vote proper. As this issue is entirely distinct from the issue of whether PDE properly denied Propel's Application, and can be resolved without analyzing whether Propel was permitted to consolidate its charter schools as an MCSO, it is "separable from the main cause of action" and, thus, satisfies "the first prong of the collateral order doctrine." *Support Ctr. for Child Advocs.*, 189 A.3d at 500 (quoting *K.C.*, 128 A.3d at 778).

4

> [W]ith respect to the second prong of the doctrine, the importance prong, a right is important if 'the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule.' [*Commonwealth v.*] *Williams*, . . . 86 A.3d [771,] 782 ([Pa.] 2014). Notably, the rights involved must implicate more than just the individual parties in the matter, and, instead, must be 'deeply rooted in public policy going beyond the particular litigation at hand.' *Blystone*, . . . 119 A.3d [at 306,] (internal quotation marks omitted).

*Support Ctr. for Child Advocs.*, 189 A.3d at 500-01 (quoting *K.C.*, 128 A.3d at 779).

Here, the 3-1 vote halting CAB's ability to rule on Propel's appeal is at least, in part, due to a long-standing vacancy. A governmental system that is non-operational because no mechanism exists to overcome such obstacles prevents the public from being able to act. Propel is not the only charter school affected by such votes. Further, vacancy problems affecting quorums are not unique to CAB. Any quasi-judicial agency requiring a quorum for official action, which suffers vacancies and recusals, will be subject to the same indefinite postponements Propel now faces. Because a decision on the issue of whether a quorum or a majority of the quorum number is needed for a board to take official action "has the potential to extend well beyond the confines of this particular case, the right involved is too important to be denied review, [thereby] satisfying the second prong." *Twp. of Worcester v. Office of Open Recs.*, 129 A.3d 44, 56 (Pa. Cmwlth. 2016).

Lastly, we turn to the third prong: whether "the question presented is such that if review is postponed until final judgment in the case, [Propel's] claim will be irreparably lost." Pa.R.A.P. 313. "[A] claim will be 'irreparably lost' if review is postponed only if it can be shown the issue involved will not be able to be raised on appeal, if [the] appeal is delayed." *Brophy v. Phila. Gas Works Phila. Facilities Mgmt.*, 921 A.2d 80, 87 (Pa. Cmwlth. 2007). Here, if CAB continues to table the matter until a 4-0 vote occurs, once that vote transpires, Propel's claim that the 3-1

5

vote should stand will be moot. The only appealable order will be the order wherein CAB garnered four unanimous votes. If the 4-0 vote favors Propel, Propel will have no reason to appeal. In addition, if Propel does not prevail, it may appeal from the substance of the vote, but not whether the original 3-1 vote denying its appeal was proper. "Accordingly, as [Propel's] appeal satisfies each of the three elements of the collateral order doctrine, we conclude that [CAB's O]rder denying [Propel's Motion] is an appealable collateral order as of right under Rule 313 . . . ." *Support Ctr. for Child Advocs.*, 189 A.3d at 500-01 (quoting *K.C.*, 128 A.3d at 781).

## Merits

Propel argues CAB's 3-1 vote was proper. Specifically, Propel contends that the common law rule applies to CAB, and pursuant to the common law rule, where a majority of the quorum votes in favor of a particular decision, that decision constitutes a final action. Thus, Propel asserts that the recusal of two CAB members in the within matter rendered those individuals as not counting toward a quorum or voting requirement. PDE and CAB (collectively, Respondents) rejoin that this Court must uphold the November 27, 2019 Order based on the plain meaning of Section 1721-A(b) of the CSL.

Section 1721-A(b) of the CSL provides:

> [CAB] shall meet as needed to fulfill the purposes provided in this subsection. **A majority of the members of [CAB] shall constitute a quorum, and a majority of the members of [CAB] shall have authority to act upon any matter properly before [CAB].** [CAB] is authorized to establish rules for its operation.

24 P.S § 17-1721-A(b) (emphasis added).

Respondents cite *Keystone Central School District v. Sugar Valley Concerned Citizens*, 799 A.2d 209 (Pa. Cmwlth. 2002), to support their position. The

6

*Keystone* Court determined that a 3-3 vote was not a valid CAB action because a majority of CAB did not agree. Therein, CAB tabled a 3-3 vote as a non-decision, and did not enter an order until the next vote when the deadlock was broken. The issue before the Court was whether a 3-3 tie constituted an affirmance or was simply the absence of a decision. The *Keystone* Court held that, "because [] CAB ultimately reached a vote that broke the deadlock[] and, since [] CAB entered an order based upon that vote, [] CAB sufficiently resolved the matter." *Keystone*, 799 A.2d at 215. Accordingly, *Keystone* is distinguishable and thus inapposite.

Propel maintains that this Court should apply the common law rule and, in support, cites *Ronald H. Brown Charter School v. Harrisburg City School District*, 928 A.2d 1145 (Pa. Cmwlth. 2007), wherein this Court explained:

> Unless there is contrary legislative intent to the common law rule requiring a vote of a full body to be valid, **all that is needed is a majority of a quorum to take action**; not that all the members of the Board must vote who are authorized but are not seated.

*Id*. at 1147 (emphasis added). The *Ronald H. Brown Charter School* Court further found that "nothing in Section 1721-A of the [CSL] indicates that the General Assembly intended to abrogate the common law rule that a majority is determined by the number currently serving, not the total number of appointments that could be made to [CAB]." *Id*. at 1150.

> [O]ur Supreme Court explained the common law rule and the policy reasons behind the rule as follows:
>
>> In determining the number of votes necessary for a deliberative body to take official action, Pennsylvania follows the common law rule. Under the common law rule[,] so long as a quorum is present at a meeting, all that is required is that the highest vote be equal to a majority of the quorum number, even though the highest vote constitutes only a plurality of all the legal votes cast. This is

7

true even if more than the quorum number is present at the meeting. For example, if there are seven members of a body and four of those members constitute a quorum and attend a meeting, a majority of the four, which would be three, is necessary to take official action of any kind. Even if all seven members, more than the necessary quorum of four, attend the meeting, the same number of votes, namely three, is all that is necessary to take official action if that is the highest number of votes cast (plurality) in a given matter. Thus, if the minimum quorum of four is present, and the vote on a particular proposal is 3 in favor and 1 against, the proposal is adopted. If all seven members of the body attend and the vote on a particular proposal is 3 in favor, 1 against and 3 abstentions, the proposal is likewise adopted by the plurality vote.

*Ronald H. Brown Charter Sch.*, 928 A.2d at 1147-48 (citations omitted) (quoting *DiGiacinto v. City of Allentown*, 406 A.2d 520, 522 (Pa. 1979)).

Under this common law rule, in a seven-person body, the highest number of votes necessary to take official action is not dependent upon the fortuity of whether 4, 5, 6, or 7 members choose to attend the meeting so long as the minimum quorum number is present. If the rule were otherwise, a member could attend the meeting and abstain from voting and have a different effect than if that person were absent from the meeting. The common law rule does not permit a member to attend and abstain from voting and yet demand that the highest number of votes required to take official action be more than if that member had been absent. This Court has previously observed that a member who attends a meeting and abstains can have the same paralytic effect as one who is absent: '[O]ne or a relatively few persons could, by their intentional absence from, or by their presence at a meeting and their failure to vote, or their casting a blank or illegal ballot, block indefinitely an important election or important legislation and thus paralyze government with obviously great harm to the public interest.' *Meixell v. Borough Council of Borough of Hellertown*, . . . 88 A.2d 594, 596 [(Pa. 1952).]

8

*Ronald H. Brown Charter Sch.*, 928 A.2d at 1148 (emphasis omitted) (quoting *DiGiacinto*, 406 A.2d at 522 (emphasis added)).

> It is well established that 'statutes are not presumed to make changes in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions.' *Carrozza v. Greenbaum*, . . . 916 A.2d 553, 566 ([Pa.] 2007) (quoting *Commonwealth v. Miller*, . . . 364 A.2d 886, 887 ([Pa.] 1976)). Thus, the Court will not disturb established legal principles without express direction from the [l]egislature *Carrozza*, 916 A.2d at 565-66.

*Everhart v. PMA Ins. Grp.*, 938 A.2d 301, 307 (Pa. 2007). "In order to abrogate a common[ ]law principle, the statute must 'speak directly' to the question addressed by the common law." *In re Rodriguez*, 900 A.2d 341, 345 (Pa. 2003) (quoting *United States v. Texas*, 507 U.S. 529, 534 (1993)).

The question addressed by the common law rule is whether a quorum or a majority of the quorum is needed for a deliberative body to take official action. Section 1721-A(b) of the CSL states: "[a] majority of the members of [CAB] shall constitute a quorum, and a majority of the members of [CAB] shall have authority to act upon any matter properly before [CAB]." 24 P.S § 17-1721-A(b). The first half of this sentence defines a CAB quorum, i.e., a majority of the CAB members is a quorum, and the second half of the sentence explains that the quorum is required in order for CAB *to act*. It directs CAB on how many members are required to hear an appeal, i.e., a quorum, but not how many members must agree *to decide* the appeal. Thus, Section 1721-A(b) is silent on the question of whether a quorum or a majority of the quorum is needed for CAB to decide the appeal. Because "nothing in Section 1721-A[(b)] of the [CSL] indicates that the General Assembly intended to abrogate the common[ ]law rule[,]" the common law rule applies. *Ronald H. Brown Charter Sch.*, 928 A.2d at 1150. Accordingly, CAB's 3-1 vote in this matter was proper.

9

## Conclusion

Because this Court concludes that CAB's 3-1 vote in this matter was proper, CAB's November 27, 2019 Order is reversed.  Propel shall have 30 days from the date of this Court's Order to appeal from CAB's denial of Propel's substantive appeal.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Propel Charter Schools,         :
            Petitioner    :
                                     :
           v.                  :
                                     :
Pennsylvania Department of Education  :
and State Charter School Appeal Board,  :   No. 1826 C.D. 2019
            Respondents    :

## O R D E R

AND NOW, this 20th day of November, 2020, the State Charter School Appeal Board's (CAB) November 27, 2019 order is reversed. Propel Charter Schools (Propel) shall have 30 days from the date of this Court's Order to appeal from CAB's denial of Propel's substantive appeal.

_____
ANNE E. COVEY, Judge